**SO ORDERED.**

**SIGNED April 2, 2024.**



_____
**STEPHEN D. WHEELIS
UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

**IN RE: LAKELAND PLANTING COMPANY**                                **CASE NO. 23-80109**

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### REAGRDING ORDER FROM HEARINGS ON ORDERS TO SHOW CAUSE

The Chapter 12 Petition was filed on February 26, 2023. Among the many movable assets of this Debtor is a Ford F350 vehicle securing a debt to Ally Capital ("Ally").[1] On August 12, 2023, the Chapter 12 Debtor filed a Motion to Sell Movable Assets at Public Auction (ECF No. 183) and a Motion to Expedite the Hearing on that Motion for August 30, 2023 (ECF No. 191), to which is attached a certificate of service stating that the Motion was provided to all parties in interest on August 16, 2023. (ECF No. 191.) The Court granted the Motion for Expedited Hearing. (ECF No. 192.) The Certificate of Service of the Motion to Sell reflects the

---

[1] On March 6, 2023, Mr. Arvind Rawal filed a Notice of Appearance and Request for Notice on behalf of "Ally Capital c/o AIS Portfolio Services, LLC," requesting Notices be sent to Attn: Ally Capital Department; AIS Portfolio Services, LLC, at 4515 N Santa Fe Ave. Dept. APS; Oklahoma City, OK 73118. (ECF No. 26.) Ally then filed Proof of Claim No. 17 on April 19, 2023, through its Claims Processor, Shersingh Rathod, pertaining to its collateral (2021 FORD F350 Super Duty Crew Cab XLT 2WD VIN:1FD8W3HT8MED46142) listing the same address for service: Ally Capital c/o AIS Portfolio Services, LLC; 4515 N. Santa Fe Ave. Dept. APS, Oklahoma City OK 73118. (Proof of Claim No. 17.)

Motion was mailed to the address for service as requested by Ally on August 17, 2023. (ECF No. 237.)

The parties responding to the Motion to Sell submitted a Consent Order setting forth the terms of the auction on September 14, 2023. (ECF No. 211.) Pursuant to the Consent Order, the auction was conducted on October 26, 2023. The Report of Auction was filed by Counsel for the Debtor on October 26, 2023, reflecting the sale of Ally's collateral at Item No. 82 for $46,000. (ECF No. 216, Ex. 1, pg.3.) Ally did not respond or oppose the sale at any time, despite receiving notice of same.

In order to consummate the sale for the purchaser and to pay Ally pursuant to its secured claim and treatment under the pending Chapter 12 Plan, the Chapter 12 Trustee requested the title of the vehicle. On November 8, 2023, Counsel for the Debtor sent a letter to Ally requesting the title, which was addressed to AIS Portfolio Services, 4515 Santa Fe Ave., Dept. APS, Oklahoma City, OK 73118, Attention: Sherisingh Rathod," matching the address for service on Ally's Proof of Claim No.17. (Debtor Exhibit 1, ECF No. 239.) Again, Ally did not respond.

By January 18, 2024, the Chapter 12 Trustee and Auctioneer still unable to consummate the sale, Counsel for the Debtor filed a Motion for Turnover of the title. (ECF No. 231.) The Court granted the relief and Ordered: "It is Further Ordered that the Clerk of Court send Notice of the entry of this Order to the address reflected at ECF#26. Further, should Ally fail to comply with this Order within 7 days of the entry of same, Ally is Ordered to appear, through its designated representative, and show cause why sanctions should not be issued against Ally, on February 14, 2024, for its failure." (Order to Turnover Property, ECF No. 232).

The Clerk of the Bankruptcy Court sent the Order to Turnover Property to Ally on January 19, 2024. (ECF No. 233.) Additionally, Counsel for the Debtor sent a second copy of the Order to Ally on January 23, 2024. (ECF No. 234.) Nevertheless, Ally failed to appear at the hearing on February 14th, and the Chapter 12 Trustee reported at that hearing that Ally failed to comply with the Order to Turnover the title to the vehicle. Further, the Chapter 12 Trustee detailed his own efforts to track down the title from Ally, contacting local counsel for Ally in Mississippi to encourage some cooperation and compliance from Ally. The Chapter 12 Trustee reported that his email to local counsel was forwarded to Ally's general counsel, Ms. Angela Rapp Williams. He further informed the Court that through his communications with local counsel, he suspected Ally was not receiving the pleadings and orders from its agent for service, AIS Portfolio services, LLC ("AIS").

Considering Ally's failure to comply with the Court's Order and its failure to appear at the hearing on February 14, 2024, the Court ordered Ally and its servicer, AIS Portfolio Services, LLC, to appear through counsel and designated representatives at a second hearing on

February 28, 2024 to show cause why the Court should not find the creditor in civil contempt of its Order for Turnover and to Show Cause. (ECF No. 241.) In that Order, the Court allowed the respondents in advance of the hearing to mitigate or purge themselves of any contempt by complying with the Order for Turnover of the title. The Order further warned that the Court may impose any such sanction to remedy and compensate the purchaser, Chapter 12 Debtor and/or Chapter 12 Trustee for the filing of the Motion for Turnover and efforts leading thereto to recover the property of the estate at issue.

The Clerk of the Bankruptcy Court served the Order on Ally Capital and its servicer AIS Portfolio Services, LLC, at the address provided for service pursuant to its Request for Notice at ECF No. 26. Thereafter, Counsel for Ally and Counsel for AIS finally enrolled in the case, filed Responses to the Court's Order to Show Cause and appeared at the February 28th hearing with a representative from each entity.

**Findings of Fact**

Present at the February 28th hearing were Counsel for the Debtor, Thomas R. Willson; the Chapter 12 Trustee, Mr. Todd Johns; Counsel for Ally, Ms. Remy Symons; Ally's designated representative, Ms. Angela Rapp Williams; Counsel for AIS, Mr. Maro Petkovich; and the designated representative for AIS, Ms. Catherine Smits. To begin, the Chapter 12 Trustee confirmed that he received the title from Ally on February 27, 2024. Evidence adduced at the February 14th hearing on the Court's Order to Show Cause was carried over to the continued hearing. (ECF No. 239.)

Counsel for Ally began with an apology on behalf of Ally, stating it had "dropped the ball" and that this "slipped through the cracks." Noting the title had been turned over the day before the hearing, she made apologies for the Order to Show Cause being necessary and initially requested to introduce an Affidavit of Ms. Angela Rapp Williams in support of Ally's position at the hearing. However, the Court noted the Ally Response was filed twice into the record and each included different versions of an Affidavit of Ms. Williams. (ECF Nos. 245, 246.) Both Responses are replete with allegations that Ally did not have notice of the Motion to Sell and resulting Consent Order. The first indicated Ally did not receive notice of the Motion to Sell (ECF No. 245) and the second stated that AIS did receive notice of the case filing, sale and Orders of this court (ECF No. 246). Because the evidence adduced at the February 14th hearing contradicted details in the filed Affidavits, the Court denied Counsel's request to introduce an Affidavit since Ms. Williams was present in court to testify. Counsel for Ally called its designated representative, Ms. Angela Rapp Williams to testify.

Ms. Williams is Assistant General Counsel for Ally assigned to this matter and had reviewed the record of this case. When asked to explain why Ally did not respond to the January

3

19th Order, she stated that she did not personally receive it right away but that she was informed of the sale by Ally's local counsel in Mississippi shortly after January 18, 2024.  She stated that since she had no record of sale of the vehicle, she decided to conduct an investigation.  She stated that AIS, at that time, informed Ally that it did not receive notice of the motion to sell.  While she was investigating the service issue, on January 22, 2024, her internal team sent her the November 8th letter from Debtor's counsel to AIS requesting the title in furtherance of the Consent Order allowing the sale by auction.   Yet, Ms. Williams stated that she did not turn to the record of the case to "pull" the January 19th Order to Turnover Property until January 30, 2024.  When asked why she did not have Ally turn over the title at that time, she stated that she referred the Order to counsel for Ally who said she could move to vacate the Consent Order authorizing the sale rather than turnover the title.  When asked why Ally failed to appear at the February 14th hearing, Williams stated it was an "oversight" and that when she referred the Court's Order to counsel, both she and Ally's counsel "missed it," referring to the language at the top of the Order at ECF No. 232 setting the hearing.

Ms. Williams acknowledged repeatedly during the hearing that if AIS received notice, Ally received notice. With respect to her contradictory Affidavits, Williams stated that when she executed her first affidavit on February 27th, AIS maintained it had not received notice of the Motion to Sell.  A few hours later, she received an AIS email admitting it did receive the Motion and notices and immediately asked Ally counsel to file the second affidavit.

When asked about remedial measures, Ms. Williams stated that this is very unusual and that what happened is an exception to Ally's general procedure, which she does not foresee happening again.  To make certain the issue is corrected, she will be reviewing this case with AIS and an internal bankruptcy team.  Ms. Williams stated that Ally employs an audit, quality control and a current oversight procedure with AIS that is "very robust," including daily, weekly, and monthly meetings.  She admitted that Chapter 12 cases are few and when asked if she found it unusual that Ally did not file pleadings in this case in a year, she said it was her understanding that AIS was monitoring the case, but that, "it was an oversight," "it was a mess," and "it's unacceptable."

At the conclusion of the hearing, Mr. Petkovich did not call Ms. Smits to testify on behalf of AIS but offered its apologies.  AIS also filed a Response, therein admitting that it received the Motion to Sell and failed to "escalate the motion to Ally." (ECF No. 248.) It also stated that it received the Motion for Turnover and the Order Granting Turnover, but "inadvertently failed to follow up with Ally Capital." (ECF No. 248.)  The Response of AIS confirms the lack of communication of the pleadings it was served in this case to Ally.

All of the Reponses, testimony and admissions of Counsel for Ally and AIS distill to the Court's finding that Ally's designated agent for service, AIS, likely failed at every instance to communicate the pleadings and events in this case to Ally. The Court further finds Ally ignored the events in this Chapter 12 case, never looking into whether a Chapter 12 Plan had been filed or inquiring why its claim was not being paid during the year the case had been pending. Once apprised of the Court's Orders, Ally willfully engaged in its own belated and protracted investigation of the events of this Chapter 12 case rather than complying with the Court's Order to Turnover Property, further delaying the administration of the case for all parties involved. The Order to Turnover Property gave Ally seven days from January 19, 2024, to turnover the title to the Chapter 12 Trustee. The title was not received by the Chapter 12 Trustee until February 27, 2024. Despite the assertion that Counsel for Ally was file a Motion to Reconsider the turnover order, Ms. Symons, Counsel for Ally, offered no explanation as to why the motion was not filed nor why she did not instruct Ally to immediately turnover the title.

## Law and Analysis

The power to impose sanctions for contempt of an order is an inherent and well-settled power of all federal courts—including bankruptcy courts. *United States. v. Fidanian*, 465 F.2d 755, 757 (5th Cir.1972) (citations omitted*); Ingalls v. Thompson (In re Bradley)*, 588 F.3d 254, 266 (5th Cir.2009); *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir.1997). Section 105(a) provides: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." While the Court should use this power sparingly, the right to sanction those who flout this Court's authority is both necessary and integral to this Court's performance of its duties. Without this power, the Court would be a "mere board[ ] of arbitration, whose judgments and decrees would be only advisory." *Gompers v. Buck's Stove & Range Co*., 221 U.S. 418, 450, 31 S.Ct. 492, 55 L.Ed. 797 (1911). "A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *In re McConathy*, No. 90-13449, 2022 WL 1612447, at *12 (Bankr. W.D. La. May 20, 2022)(quoting *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987)).

Here, this Court's Order to Turnover Property was effective January 19, 2024, requiring Ally to turn over title of its collateral to the Chapter 12 Trustee, and Ally failed to comply with this Order. "A turnover action 'invokes the court's most basic equitable powers to gather and manage property of the estate.'" *Tow v. Park Lake Communities, LP*, No. CV H-17-3364, 2018

WL 287861, at *4 (S.D. Tex. Jan. 4, 2018) citing 5–542 Collier on Bankruptcy P 542.01 (16th ed. 2017) (quoting Braunstein, 571 F.3d at 122). Ms. Williams testified that once aware of the Order, she purposefully withheld the title to the vehicle with the intent to "investigate" why Ally was not aware of the Motion to Sell and resulting Consent Order well after it had become final. Through her Responses and testimony, Ms. Williams attempted to justify Ally's failure to turnover the title based on her mistaken insistence that service was not properly made and on her consultation with Counsel for Ally who indicated she could file a Motion to Vacate the final and non-appealable Consent Order. To those concerns, the Court notes that while "willfulness is not an element of civil contempt," even if Ally was in good faith in relying on counsel, *if* advised not to turnover the title, neither good faith nor reliance on the advice of counsel are defenses to civil contempt. *In re McConathy*, 2022 WL 1612447, at *13, quoting *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 401 (5th Cir. 1987) and *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir. 2002), citing *Beckhart v. NewRez LLC*, 31 F.4th 274, 278 (4th Cir. 2022). However, based on further testimony, the Court finds Ally was not in good faith in refusing to comply with the turnover order and, as stated above, Counsel never filed any pleadings to address the turnover order.

Ms. Williams made a dubious assertion that despite being alerted to the events in this case by local counsel on January 18th, combined with her admission that Ally's internal team gave her a copy of the November 8th letter from Debtor's counsel to AIS requesting the title on January 22nd, she waited another eight days to actually consult the record of the case, and even then, apparently did not question why other pleadings and notices that were sent to AIS had not reached Ally's attention. Even more troubling to the Court is her testimony that when she finally read the Court's Order Granting Turnover on January 30th, both she *and* Ally's Counsel just "missed" the Court's inserted language at the top of the Order that scheduled the February 14th hearing, but even so, decided to ignore the body of Order that they did see, which ordered the turnover of the title. This is precisely the conduct to be deterred as explained by the United States Supreme Court, "If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." *Gompers*, 221 U.S. 418, at 450.

Under these circumstances, while subjective intent to violate an order is not required, the Court finds Ally in bad faith in withholding the title after its receipt of the Court's Order to Turnover Property. Where a party is aware of an order and voluntarily engages in the conduct that violates the order, that party may be held in civil contempt. *In re CGE Real Est. Holdings, LLC*, No. 19-40007-MXM-11, 2021 WL 267669, at *4 (Bankr. N.D. Tex. Jan. 26, 2021), citing *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("Since the purpose [of civil

contempt] is remedial, it matters not with what intent the defendant did the prohibited act."). Ally failed to meaningfully participate in this case, and upon being ordered to turnover the title of its collateral to the Chapter 12 Trustee, it delayed an additional 29 days before complying with the Court's Order.[2]

Based on the foregoing, and in furtherance of the Court's Order to Show Cause, the Court finds Ally in contempt of its January 19, 2024 Order to Turnover Property, and the Court turns to the determination of the appropriate sanction. "The Fifth Circuit has observed that '[j]udicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *In re Leverette*, No. 11-51548-KMS, 2013 WL 5350902, at *2 (Bankr. S.D. Miss. Sept. 25, 2013) quoting *Am. Airlines Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir.2000).

> "Civil contempt can serve two purposes," either coercing compliance with an order or "compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct." Like criminal contempt, remedial civil contempt is backward-looking. But remedial contempt is civil, because it remedies the consequences of defiant conduct on an opposing party, rather than punishing the defiance per se.

*In re Bradley*, 588 F.3d at, 263–64, quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961–62 (5th Cir.1996) (citing *Petroleos Mexicanos v. Crawford Enters.*, 826 F.2d 392, 400 (5th Cir.1987)).

The Court's Order to Show Cause allowed Ally in advance of the hearing to mitigate or purge itself of any contempt by complying with the Order for Turnover of Property. The title was turned over and the Court finds Ally complied with the Order to Show Cause and purged itself of contempt as of February 27, 2024. The second purpose of the sanction is to compensate the parties who have "suffered unnecessary injuries or costs because of the contemptuous conduct." *Id.* The Debtor, participating creditors, the Auctioneer, the third-party purchaser, and the Chapter 12 Trustee experienced significant delay and unnecessary administrative expenses in the progress of this liquidating Chapter 12 case due to the failure of Ally to meaningfully participate in the case, monitor the treatment of its claim, and to comply with the Orders of this Court. Although Ally finally complied with the Court's Order to Turnover Property, it was not done

---

[2] The Clerk of the Bankruptcy Court sent the Order to Ally on January 19, 2024 to its agent for service of pleadings pursuant to its Request for Notice at ECF No. 26 and its Proof of Claim No. 17. Under Fed. R. Bankr. P. 9006(a) and (f), the seven days to comply with the Order plus three days to account for the Clerk's mailing of the Order ended on January 29, 2024. The title was turned over on February 27, 2024, which is 29 days later.

until the eve of the *second* hearing on the Court's Order to Show Cause why sanctions for civil contempt should not be imposed.

Thus, as contemplated in the Order to Show Cause, the Court finds that Ally should be sanctioned an amount for each day that it delayed in turning over the title to the Chapter 12 Trustee, the sum of which shall be held by the Chapter 12 Trustee for the payment of administrative expenses attributable to Ally's delay in turning over the title. The Court will allow the affected parties, including Counsel for the Debtor and other professionals employed by the estate, to file Applications for Payment of Administrative Expenses incurred as a result of Ally's failure to timely turnover the title.

**Ruling**

For the foregoing reasons, Ally is hereby found in contempt of the Court's Order to Turnover Property and will be ordered to pay $100 for each day of the 29 days that Ally failed to comply with the Order Granting Turnover, for a total sanction of $2,900, which shall be paid to the Chapter 12 estate through the Chapter 12 Trustee, Mr. Todd Johns. Counsel for the Debtor and other professionals employed by the estate may file Applications for Payment of Administrative Expenses incurred as a result of Ally's failure to timely turnover the title and notice same for a hearing on an "if and only if" basis. The Court will enter a separate Order consistent with these Findings of Fact and Conclusions of Law.

# # #